**William Lee REED, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–77–643.

Court of Criminal Appeals of Oklahoma.

June 13, 1978.

George P. Pitcher, Thomas Jot Hartley, Legal Intern, Vinita, for appellant.

Larry Derryberry, Atty. Gen., Julia T. Brown, Asst. Atty. Gen., for appellee.

### OPINION

BUSSEY, Presiding Judge:

The appellant, William Lee Reed, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court, Craig County, Case No. CRF–76–318, of the crime of Burglary in the Second Degree After Former Conviction of a Felony. Punishment was assessed at a term of ten (10) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the jury verdict the defendant has perfected his appeal after being granted permission to appeal out of time.

Briefly stated, the evidence adduced at trial is as follows, to-wit: Mary Ironside testified that she was a resident of Vinita, Oklahoma, and that on August 11, 1976, around 3:00 p. m. she noticed the defendant walking across the street from her house and then cutting across a neighbor's yard and going back toward the alley. Shortly thereafter the witness went across the street to visit her sister who said that she had seen someone enter Ms. Ironside's house through the back door. Ms. Ironside then returned home accompanied by her niece.

She further testified that her dog ran into the house and went into her bedroom and clothes closet and then out to the front porch where he began barking at the defendant, who was standing on the screened-in porch. When confronted he asked the witness if she had any yard work. After being told to leave, the defendant unlocked the screen door and left. The witness stated that she had not given the defendant permission to be in her home; that the back door had been closed but unlocked; that she always kept the door on the screen porch locked from the inside and that money which she kept in a Mason jar in her kitchen was missing.

Lottie Altebaumer then testified that she lived across the street from her sister Mary Ironside and that on the afternoon of the date in question she saw a boy come down the alley, open her sister's back door and enter the house. Shortly thereafter her sister came over and the witness asked her about the boy. Ms. Ironside then returned home accompanied by her niece.

Anita Altebaumer related that she accompanied Mary Ironside back to her house, went in the back door and was the first to find the defendant standing on the front porch. The defendant asked Ms. Ironside if she needed any yard work done and left. The witness further stated that the defendant had a writing or a tattoo on his arm.

Officer Raymond Clarkson of the Vinita Police Department testified that at about 2:30 p. m. on the date in question he saw the defendant walking near the Ironside residence. The State then rested.

The defendant, testifying in his own behalf, stated that on August 11, 1976, he was living with his sister in Tulsa, and that he went to his father's house between Drumright and Mannford to get some clothes. He denied being in Vinita on the 11th day of August and further denied being in Ms. Ironside's residence. On cross-examination the defendant admitted having tatoos on both arms and related that he had previously been convicted of burglary in the second degree in Nowata County in 1975.

The defendant's father, William D. Reed, then testified that in August his son had been living with him but had gone to Tulsa to live with his sister in hopes of finding work. He further testified that the defendant returned to pick up some clothes but that he could not testify for certain that it was on the 11th of August. The defendant's sister and brother-in-law each testified that they lived in Tulsa and that on August 10, 1976, the defendant stayed all night in their home in Tulsa and remained there all day on the 11th. The defense then rested.

On rebuttal the State called Bobby Floyd of the Vinita Police Department who testified that on the afternoon in question he was with Raymond Clarkson and observed the defendant walking down an alley toward Mary Ironside's home.

The defendant's first assignment of error contends that the evidence presented at the trial was insufficient as a matter of law to sustain the verdict rendered. However, the defendant submits no authority in support of his contention. As stated in *Fryar v. State,* Okl.Cr., 385 P.2d 818 (1963), it is necessary for counsel for the defendant not only to assert error but also to support his contentions by both arguments and citations of authority. When this is not done, and it is apparent that the defendant has been deprived of no fundamental right, this Court will not search the books for authority to support the mere assertion of error. See also *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969).

■ It should also be noted that a thorough reading of the transcript in its entirety reveals that there was competent evidence in the record from which the jury could reasonably conclude that the defend- ant was guilty as charged. This court will not interfere with the verdict since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Turner v. State,* Okl.Cr., 479 P.2d 631 (1971).

The defendant next asserts that the trial court committed reversible error in presenting jury instructions which referred to a former conviction and in admitting into evidence State's Exhibit No. 1, a certified copy of the judgment and sentence entered upon the defendant's prior conviction of second degree burglary in Nowata County on April 28, 1975. In support of his contention the defendant argues that such a procedure was in violation of the provisions of 22 O.S.1971, § 860, which reads as follows, to-wit:

"§ 860. Second or subsequent offenses— Trial procedure.—In all cases in which the defendant is prosecuted for a second or subsequent offense, except in those cases in which former conviction is an element of the offense, the procedure shall be as follows:

"(a) The trial shall proceed initially as though the offense charged was the first offense; when the indictment or information is read all reference to prior offenses shall be omitted; during the trial of the case no reference shall be made nor evidence received of prior offenses except as permitted by the rules of evidence; the judge shall instruct the jury only on the offense charged; the jury shall be further instructed to determine only the guilt or innocence on the offense charged, and that punishment at this time shall not be determined by the jury.

"(b) If the verdict be guilty of the offense charged, that portion of the indictment or information relating to prior offenses shall be read to the jury and evidence of prior offenses shall be received. The court shall then instruct the jury on the law relating to second and subsequent offenses, and the jury shall then retire to determine (1) the fact of former convic-

tion, and (2) the punishment, as in other cases."

The record before us reflects that on cross-examination the defendant admitted that he had previously been convicted on the 28th day of April, 1975, in Nowata County for burglary in the second degree, that he was represented by an attorney and that he received a five-year suspended sentence. The record further reflects that the defendant was on probation at the time of the burglary of Ms. Ironside's home.

■ In *Jones v. State,* Okl.Cr., 527 P.2d 169 (1974), this Court held that there is a limited exception to the procedure set out in 22 O.S.1971, § 860, when the defendant under oath confesses the former conviction. Under such circumstances there is no question of fact within the jury's province as to whether the defendant is guilty of only the primary offense or of the primary offense after former conviction. See also *Englebrecht v. State,* Okl.Cr., 569 P.2d 484 (1977).

■ The defendant further argues that the admission into evidence of the certified copy of the judgment and sentence arising out of the prior conviction constituted reversible error since it was not required within the rules of evidence to attack the credibility of the defendant. If the introduction of the judgment and sentence was error it is our opinion that the error was harmless since the admission of the judgment could not have resulted in a miscarriage of justice nor have been a substantial violation of a constitutional or statutory right, since the defendant admitted the prior conviction. Title 20 O.S.1971, § 3001.

■ Finally, with regard to this assignment of error, the defendant maintains that the trial court erred in submitting Instruction No. 3, since it violated the provisions of § 860 set out above. The instruction complained of reads as follows, to-wit:

"The defendant herein has admitted to the commission of another crime, the Court has not admitted this testimony as tending to prove that the defendant is guilty of the crime charged in the infor-

mation. A person may not be convicted of the commission of one offense by proof that he committed another crime.

"The evidence admitted herein can only be considered by you, in the first instance, as bearing on the credibility of the defendant. That is to say that you may consider the former conviction of the defendant as such may or may not, in your judgment, affect the weight and credit that you will give to the testimony of the defendant."

As stated above, § 860 applies to situations where a two-stage proceeding is required. Under the limited exception set out in *Jones,* supra, a two-stage proceeding was not necessary in the instant case. Therefore, the limiting instruction complained of was not error. The defendant's second assignment is without merit.

■ The defendant's third assignment of error contends that the trial court committed reversible error by submitting an erroneous instruction to the jury which resulted in the imposition of an excessive punishment. The portion of the instruction complained of is as follows, to-wit:

"Burglary in the second degree after former conviction of a felony is punishable by imprisonment in the state penitentiary for a term of not less than ten years."

The defendant argues that the instant case is controlled by 21 O.S.Supp.1976, § 51(2), which reads as follows, to-wit:

"If such subsequent offense is such that, upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five (5) years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not to exceed ten (10) years."

He claims that this provision should govern because the primary offense of burglary in the second degree, 21 O.S.1971, § 1436(2), carries a punishment range of two to seven years and, therefore, the defendant could have received punishment of less than five years. We disagree.

The language " . . . for five (5) years, or any less term, . . . " found in § 51(2) indicates a maximum possible sentence of five years. The primary offense carried a maximum sentence of seven years and § 51(2) does not apply. This Court in numerous cases has held that a ten year sentence for burglary in the second degree after former conviction of a felony was not excessive. *Warren v. State,* Okl. Cr., 537 P.2d 443 (1975); *Dillon v. State,* Okl.Cr., 508 P.2d 652 (1973), and *Smith v. State,* Okl.Cr., 483 P.2d 1191 (1971). The defendant's third assignment is without merit.

The defendant next asserts that the extrajudicial photographic identification procedure followed by the Vinita Police constituted a denial of the defendant's constitutional right to due process of law for the reason that said procedure was unnecessarily suggestive and conducive to an irreparable mistake in identification. We need only note however that the transcript of the trial proceedings fails to reflect any objection to the in-court identification of the defendant made by Ms. Ironside or Anita Altebaumer, nor does the record reflect that the defendant at any time prior to or during the course of the trial requested an evidentiary hearing on the matter.

■ Where a defendant does not object to his in-court identification and does not request an evidentiary hearing on the matter, the allegedly suggestive nature of such identification cannot be raised as an issue on appeal. *Randleman v. State,* Okl.Cr., 552 P.2d 90 (1976), and *Towning v. State,* Okl.Cr., 521 P.2d 415 (1974). We further note that in the instant case there is no indication that there existed any substantial likelihood of irreparable misidentification. At the preliminary hearing Anita Altebaumer stated that the three pictures presented to her and Ms. Ironside were of three different individuals and that they picked the defendant. The evidence further reflects that both ladies confronted the defendant on the front porch and talked to him. This assignment of error is also without merit.

The defendant's last assignment of error urges that the trial court committed prejudicial error in admitting evidence of trailing by a dog where no proper foundation had been laid for the introduction of such evidence. In support of his contention the defendant cites *Buck v. State,* 77 Okl.Cr. 17, 138 P.2d 115 (1943). However, *Buck* concerned the trailing of unknown individuals by bloodhounds and is certainly distinguishable from the case at hand.

In the instant case Ms. Ironside testified that her niece went to the front portion of the house while she and her dog went to the bedroom. It is apparent that the niece was the first to find the defendant on the front porch. The admission of the testimony of Ms. Ironside concerning her dog first going to the bedroom and then barking at the defendant on the front porch was not error. There was no attempt to show that the scent of an unknown intruder was followed by a dog through swamp and sage and there was no necessity for the laying of a predicate concerning the training and experience of the family pet in this instance. Defendant's final assignment is without merit.

From an examination of the entire record it is our opinion that the defendant received a fair and impartial trial before a jury; that no substantial right of the defendant was prejudiced and that the judgment and sentence appealed from should be, and the same hereby is AFFIRMED.

CORNISH and BRETT, JJ., concur.